IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| LEA CAIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 19-cv-1385-RJD |
| v. | ) | |
| | ) | |
| HIMANSHU "SAM" PATEL and | ) | |
| ANTHENEON, ILLINOIS, INC., | ) | |
| | ) | |
| Defendants. | | |

**ORDER**

**DALY, Magistrate Judge:**

This matter comes before the Court on Plaintiff's Motion for Attorney Fees and Expenses (Doc.128).   Defendants filed a Response (Doc. 132).   As explained further, Plaintiff's Motion is GRANTED IN PART and DENIED IN PART.

Plaintiff's Second Amended Complaint contained ten claims against Defendants, alleging that they committed various violations of the Fair Labor Standards Act, the Illinois Minimum Wage law, the Illinois Wage Payment and Collection Act, the Americans with Disabilities Act ("ADA"), the Illinois Human Rights Act ("IHRA"), and the Illinois Whistleblower Act (Doc. 36). The Court granted partial summary judgment in favor of Defendants on Plaintiff's failure to accommodate allegations in Counts Eight and Nine (violations of the ADA and IHRA); Plaintiff's retaliation/discrimination claims in Counts Eight and Nine remained. During trial, Plaintiff voluntarily dismissed Counts Six and Seven (violations of the Illinois Wage Payment and Collection Act), her discrimination allegations in Count Eight (ADA), and she dismissed Count Nine (IHRA) against Himanshu Patel only. The Court granted judgment as a matter of law in favor

of Defendants on Count Three (retaliation under the Fair Labor Standards Act).   The jury

deliberated the following claims:

| | | |
|---|---|---|
| Count 1: | Violation of Fair Labor Standards Act (failure to pay minimum wage) against both Defendants | |
| Count 2: | Violation of Fair Labor Standards Act (failure to pay overtime) against both Defendants | |
| Count 4: | Violation of Illinois Minimum Wage Law (failure to pay minimum wage) against Motel 6 | |
| Count 5: | Violation of Illinois Minimum Wage Law (failure to pay overtime) against Motel 6 | |
| Count 8: | Violation of the Americans with Disabilities Act against Motel 6 (retaliation) | |
| Count 9: | Violation of the Illinois Human Rights Act against Motel 6 (retaliation) | |
| Count 10: | Violation of the Illinois Whistleblower Act ("IWA") against Motel 6 | |

The jury found in favor of Plaintiff on Counts 1, 2, 4, and 5 and awarded her $30,000.00

in damages.   The jury found in favor of Defendant Motel 6 on Counts 8-10.   The Court awarded

Plaintiff $30,000.00 in liquidated damages pursuant to the Fair Labor Standards Act ("FLSA").

The Court also awarded Plaintiff $12,375.00 in interest and $37,500.00 in treble damages pursuant

to the Illinois Minimum Wage Law ("IMWL").   Plaintiff now asks the Court to award her

approximately $168,000.00 in attorneys' fees and costs.

## Discussion

Because Plaintiff received a favorable judgment on her FLSA and IMWL claims,

Defendants must pay her reasonable attorneys' fees and costs. 29 U.S.C. §216(b); 820 ILCS

105/12(a).   To determine the amount Defendants must pay for Plaintiff's attorney fees, the Court

uses the "lodestar method: "the hours reasonably expended multiplied by the reasonable hourly

rate." *Johnson v. GDF, Inc*., 668 F.3d 927, 929 (7th Cir. 2012).   The Court may then reduce the

lodestar if the plaintiff "achieved only partial or limited success."   *Montanez v. Simon*, 755 F.3d

547, 556 (7th Cir. 2014).

**Hourly rates**

The reasonable hourly rate is "derived from the market rate" and "the best evidence of any attorney's market rate is his or her actual billing rate for similar work." *Id*. at 933. Four attorneys worked on Plaintiff's case and Plaintiff asks that the Court award their hourly rates in the following amounts:

| | |
|---|---|
| Veronica Johnson | $435 |
| Sarah Jane Hunt | $350 |
| Amber Kempf | $350 |
| MaryAnne Quill | $250 |

Plaintiff does not provide any evidence establishing that her attorneys have ever charged or have actually been paid the above-listed amounts and therefore the Court must consider evidence of rates charged by "similarly experienced attorneys" in similar cases, as well as "evidence of fee awards the attorney has received in similar cases." *Pickett v. Sheridan Health Care Ctr.,* 664 F.3d 632, 640 (7th Cir. 2011) (*quoting Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 555 (7th Cir. 1999)). The Seventh Circuit prefers that district courts rely upon "third party affidavits that attest to the billing rates of comparable attorneys" over evidence of fee awards the attorney has received in similar cases. *Id*. The Court may make "its own determination of a reasonable rate" if the fee applicant does not produce satisfactory evidence. *Id*. (internal citations omitted).

Plaintiff did not submit any third-party affidavits that establish the billing rates for attorneys comparable to her counsel. She submitted a declaration from a fellow employment law attorney who simply opines it was reasonable for Sarah Jane Hunt to charge $350/hour and Veronica Johnson to charge $435/hour in this matter. This declaration is not helpful, as the

Seventh Circuit instructs that "conclusory affidavits from attorneys 'merely opin[ing]' on the reasonableness of another attorney's fee-unlike affidavits describing what 'comparable attorneys charge for similar services' -- have little probative value." *Montanez*, 755 F.3d at 554 (*citing Picket*, 664 F.3d at 647).

Plaintiff also submitted a document titled "Billing Rates 2019" by Missouri Lawyers Media that provides the following:

> ….rates for 213 Missouri-based attorneys and 77 Missouri staff members..and rates for 18 lawyers and staff who work at out-of-state offices…[a] large portion of that data is thanks to a massive class-action settlement with Syngenta regarding its use of genetically modified corn.   A federal judge gave final approval late last year to a $1.51 billion class-wide settlement-the largest Missouri case of 2018 as tracked by Missouri Lawyers Media.   A third of that settlement went to fees for hundreds of lawyers across the country who aided in the litigation.   The filings in support of that fee application also reveal the biggest hourly fees in this year's Billing Rates edition-$865 an hour…[t]he median hourly rate for Missouri lawyers as a whole was $370 an hour, up from the $318 median rate we reported in 2018.   Outside of the state's two metropolitan areas, the median remained at $250.

(Doc. 128-3, p. 2).   It is unclear what Plaintiff expects the Court to glean from this document other than hourly fees for select Missouri attorneys ranged from $160-$865 (*Id*., p. 2-8). "Employment" is a practice area listed for some of those attorneys (*Id*.).   The document also lists the hourly rates for 10 attorneys from Illinois, ranging from $175-$875 (*Id*., p. 8-13). "Class Action/MDL" is the practice area listed for all 10 attorneys from Illinois (*Id*.).   As the document states, it appears the hourly rates listed were significantly affected by "a massive class action case" involving genetically modified corn.   To the extent this document provides useful information that applies to the case at hand, Plaintiff fails to identify that specific information and the Court therefore declines to consider the document.

Sarah Jane Hunt provided a declaration to the Court that included information regarding

two cases where her fees charged at a rate of $300/hour were included in a court-approved settlement (Doc. 128-1, p. 2).   Considering these court-approved settlements, and because Defendants do not dispute that $350/hour is a reasonable charge for Sarah Jane Hunt's services in this matter, the Court will calculate Attorney Hunt's hours at a rate of $350/hour.

Defendants do, however, object to Attorney Johnson's rate of $435/hour.   Attorney Johnson states in her declaration that "my hourly rate is $435 an hour," but this conclusory statement falls short of establishing that she actually charges her clients $435/hour or is actually paid $435/hour by her clients, particularly because she states elsewhere in the declaration that most of her "practice involves litigation under fee shifting statutes" (Doc. 128-2, p. 1-2).   Attorney Johnson further states that in 2017 she was awarded "$400 per hour with a 1.5 multiplier, for an effective hourly rate of $600 per hour" in a case pending in Lincoln County, Missouri; she was also awarded $385/hour for another case in the U.S. District Court for the Eastern District of Missouri in 2014.   However, Attorney Johnson does not provide any information to the Court regarding the similarity of these cases to the instant matter, including why the "1.5 multiplier" was used.   Defendants propose that the Court use $400/hour for Attorney Johnson's fees.   Because Attorney Johnson was most recently awarded fees at the rate of $400/hour, and because Plaintiff provides no other probative evidence for which the Court could determine a higher rate is appropriate, Attorney Johnson's fees will be calculated at $400/hour.

Regarding the proposed rates of $250/hour for associate Mary Anne Quill and $350/hour for associate Amber Kempf, Attorney Hunt opines in her affidavit that the proposed rates are commensurate with their experience--another conclusory opinion with "little probative value," especially because Attorney Hunt was/is their employer.   *See id.*   No other information (e.g., whether their rates were actually charged to or paid by their client(s), evidence of fee awards in

other cases) is provided for Attorneys Kempf and Quill, so the Court must determine their reasonable rates.[1]   Looking at recent fee-shifting cases from this district, $185/hour was awarded in 2018 for an associate's work on an Age Discrimination in Employment Act ("ADEA") claim tried to verdict.  *Pisoni v. Illinois*, Case No. 12-cv-678-SMY, 2018 WL 4144495, *3 (S.D. Ill. Aug. 30, 2018).   In another ADEA case where the plaintiff was sanctioned for discovery misconduct and ordered to pay defense counsel's fees, $131.75/hour was awarded for an associate's work.  *Dave' v. Board of Trustees of Southern Illinois University, Carbondale*, Case No. 18-cv-02122-GCS, 2022 WL 575614, *4 (S.D. Ill. Feb. 25, 2022).   Neither rate was contested by the opposing party.   In a claim filed pursuant to the Individuals with Disabilities Education Act, the Court awarded attorney's fees at the rate of $200/hour for a newly licensed attorney representing the plaintiffs who had claimed a rate of $250/hour.[2]  *K.S. v. Bd. of Education of Vandalia Community Unit School Dist. No. 203*, Case No. 16-cv-22-NJR-DGW, 2018 WL 3993628, *9 (Aug. 21, 2018).

According to Attorney Hunt's affidavit, Attorney Quill graduated from law school in 2018, approximately 18 months before this case was filed.  This case was tried in July 2021.  From 2018-2021,  Attorney Quill "litigated multiple employment, special education, Fair Housing, and civil rights matters" (Doc. 128-1, p. 4).  Attorney Kempf graduated from law school 19 years before this case was filed and has "decades of experience in the legal field" but no information is given regarding the type of law she practiced during those decades (*Id.*).   In light of recent Orders

---

[1]  Defendants arbitrarily propose $160/hour for both attorneys because that is the lowest rate listed in the "Billing Rates 2019" document by Missouri Lawyers Media.  As previously discussed, the "Billing Rates 2019" document was not presented to the Court in a useful manner.

[2]  The attorney in question graduated from law school two years before she represented the plaintiff at a hearing, and had only been licensed to practice law in Illinois for three months prior to the hearing. *Id.*

from this district in similar fee-shifting cases, and in light of the information (or lack thereof) provided regarding their experience, the Court finds it reasonable to calculate Attorney Quill's rate at $225/hour and Attorney Kempf's rate at $250/hour.

**Hours reasonably expended**

The Court must exclude "excessive, redundant, or otherwise unnecessary hours." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) ("[c]ases may be overstaffed, and the skill and experience of lawyers vary widely"); 29 U.S.C. §216(b).   Plaintiff carries the burden of producing billing entries that   sufficiently document her attorneys' work on this case.   *Fox v. Vice*, 563 U.S. 826, 838 (2011); *Montanez*, 755 F.3d at 556.   In examining the attorneys' billing entries, the Court's goal is "to do rough justice, not to achieve auditing perfection."   *Id*.

Upon careful examination of Plaintiff's billing entries, the Court identified a problematic pattern.   First, four attorneys worked on this case, though none of the issues (e.g., whether Plaintiff worked as a manager at Motel 6, whether Defendants retaliated against her) were complex.   Two of those attorneys--Veronica Johnson and Sarah Hunt--are senior attorneys, while Mary Anne Quill and Amber Kempf are associates.   Of course, it is common and appropriate for associates to spend a significant amount of time researching, writing, preparing discovery responses, etc.--all of which must then be reviewed by a more senior attorney.   In this case, however, one associate would conduct research, prepare discovery responses, and draft pleadings; the other associate would do the same.   Then Sarah Hunt would review.[3]   Both associates prepared for trial with Plaintiff.   The Court expects that Plaintiff's attorneys would not bill their client for these duplicative efforts, and the Court will not bill Defendants for them.   The Court reduces Attorney

---

[3]  Plaintiff voluntarily reduced many of Sarah Hunt's "Review" entries, and the Court considered those voluntary cuts when determining how many of Attorney Kempf's hours should be reduced.

Kempf's hours, and not Attorney Quill's, because it was Attorney Quill who conducted depositions and took an active role at trial and obviously, familiarity with a case allows an attorney to work more efficiently.

Likewise, Plaintiff fails to establish that she needed two senior attorneys to prepare and appear for trial.   From the Court's perspective, the appearance of a second senior attorney less than a month before trial only complicated certain matters (e.g., jury instructions) in this relatively uncomplicated case.[4] Therefore, where Attorney Johnson and Attorney Hunt billed for the same task, the Court will not order Defendants to pay for Veronica Johnson's time, as Sarah Hunt tried the case and was involved in it from inception.

In their Response to Plaintiff's Motion for Fees and Costs, Defendants argue that Plaintiff should have retained local counsel and her fees/costs should be reduced accordingly.   It would be a stretch for the undersigned to find that Plaintiff's counsel's firm, located in St. Louis, Missouri, is not "local" counsel when St. Louis attorneys are frequently approved for the Southern District of Illinois CJA panel and appointed to criminal cases in this district, both in East St. Louis and Benton.[5]   Plaintiff had no control over whether her case was tried in the East St. Louis courthouse or the Benton courthouse.   Defendants' "local counsel" argument therefore carries no weight, and neither does their argument that Plaintiff's attorneys should have not charged for their time spent traveling to court for trial.   Defendants' counsel states in her affidavit that she does not charge her clients for travel time, and Defendants submit an affidavit from another attorney who makes the

---

[4] At all three of the jury instructions (two informal, one formal), the attorneys representing Plaintiff could not decide which claims they were going to present to the jury and which claims they were going to voluntarily dismiss, and/or made last minute decisions regarding the dismissal of these claims.   These last-minute decisions resulted in multiple delays for the Court and the jurors.
[5] The Criminal Justice Act ("CJA") mandates that U.S. District Courts operate a system "for furnishing representation" to persons who have been charged with certain crimes and are unable to afford an attorney. 18 U.S.C. §3006A(a).

same statement.   Regardless, the Court finds it reasonable for Plaintiff's attorneys to charge for their travel time.

Some of Defendants' objections are, at best, confusing.   Defendants claim that Plaintiff's counsel should not charge for the time spent responding to their Motion for Summary Judgment because their Motion for Summary Judgment was "not directed to UNSUCCESSFUL claims" (emphasis in the original) (Doc. 132-1, p. 9-11).   First, the Court assumes Defendants meant to argue that the Motion for Summary Judgment WAS directed to Plaintiff's unsuccessful claims, which would be a valid reason for denying Plaintiff's attorneys' fees for their time spent responding.   Regardless, Defendants directed their Motion for Summary Judgment to ALL of Plaintiff's claims, (Doc. 49).   Plaintiff's attorneys cut their own entries regarding the time they spent on the ultimately unsuccessful claims in the Response to Defendants' Motion for Summary and the Court likewise does not include them.

At multiple times and in various contexts throughout this case, Defendants have argued that Plaintiff owes Defendant Patel money.   Defendants now contend in their Response to Plaintiff's Motion for fees that "[a]ny time that Plaintiff's counsel seeks fees for time to address the loan should be redacted as it was never an issue in this case" (Doc.  132, p. 160).   This argument is non-sensical.   Defendants raised, as an affirmative defense, that "[t]o the extent that a Defendant is found liable for any damages to Plaintiff, which each Defendant denies, Defendant Patel is entitled to an offset of all monies borrowed from him by Plaintiff which she has yet to be repaid" (Doc. 37).   Plaintiff filed a Motion in Limine to bar all mention of the loan at trial, and Defendants objected (Docs. 61 and 67).   Defendants argued at the final pretrial conference that they should be able to present evidence of the loan at trial to show they "were trying to help" Plaintiff (Doc. 78, p. 9).   The Court granted Plaintiff's Motion to bar evidence of the loan, and

Defendants then filed a Motion to Reconsider, which was denied (Docs. 104 and 106).   Plaintiff realized that Defendants had raised the loan as an affirmative defense and filed a Motion to Strike it (Doc. 71).   Defendants objected that the Motion was untimely, which was correct (Docs. 89 and 97).   Regardless, the issue of the loan appeared to the Court to be an improper affirmative defense, and the Court ordered Defendants to show cause as to why it should not be stricken (Doc. 97). Defendants then finally conceded that it should be stricken (Doc. 103).   Given the resources and time spent by Plaintiffs and the Court on the "loan" (an issue inserted by Defendants), it is confounding that Defendants now claim "it was never an issue in this case."

Based upon the above analysis, the Court finds the following figures represent reasonable fees for Plaintiff's attorneys' time.

**PLAINTIFF'S REASONABLE FEES**

| Attorney | Reasonable Hourly rate | Hours reasonably expended | Total |
|---|---|---|---|
| Veronica Johnson | $400 | 36.9 | $14,760 |
| Sarah Hunt | $350 | 151 | $52,850 |
| Mary Anne Quill | $225 | 187.6 | $42,210 |
| Amber Kempf | $250 | 99.4 | $24,850 |
|  |  |  | $134,670 |

**Reductions based upon Plaintiff's limited success**

Having found that Plaintiff's reasonable attorneys' fees are $134,760, the Court must now consider whether Plaintiff obtained an "excellent result."   Plaintiff lost four of her ten claims, but the Court finds it more meaningful to consider the theories Plaintiff attempted to establish during the course of this litigation: 1) that she did not receive overtime compensation; 2) that she was retaliated against for complaining that she did not receive overtime compensation; 3) that she was

retaliated against because of her disability; 4) that she was retaliated against because she reported Defendants to OSHA; 5) that Defendants failed to reasonably accommodate her disability.[6]   Out of these five scenarios, Plaintiff's only success was to establish that Defendants did not pay her overtime compensation.   Plaintiff calculated that Defendants owed her approximately $80,000 in damages, but the jury only awarded her $30,000.   However, the Court awarded her an additional $79,875.00 in interest, liquidated damages, and treble damages (all statutory remedies) for a total of $109,875.00.   Considering that four of her five theories failed, Plaintiff did not obtain an excellent result, but her total damages certainly represent a good result.

Many of the entries by Attorney Quill and Attorney Kempf are easily reduced to represent Plaintiff's limited success because they did not involve Counts 1, 2, 4, and 5. Namely, they spent a fair amount of time responding to Defendants' Motion to Dismiss and preparing a First Amended Complaint, neither of which involved the issues in Counts 1, 2, 4, and 5.   Attorney Kempf worked on written discovery and Attorney Quill spent significant time on depositions and written discovery, all of which were incurred at a time where 80% of Plaintiff's theories related to retaliation and only 20% related to overtime compensation. The Court previously considered and reduced their duplicative entries to total 99.4 reasonable hours spent by Attorney Kempf on this matter, and 187.6 reasonable hours spent by Attorney Quill.   To account for Plaintiff's unsuccessful claims, the Court strikes 45 additional hours for Attorney Kempf and 50.6 hours for Attorney Quill.

---

[6] The Court granted summary judgment in favor of Defendants on Plaintiff's failure to accommodate claim under the ADA, finding that she had not exhausted her administrative remedies, but allowed Plaintiff to proceed on an ADA discrimination claim (Doc. 66). When Plaintiff pursued her administrative remedies, she completed a document that stated Defendants had discriminated against her because of her disability (Doc. 49-4).   At trial, Plaintiff's counsel informed the undersigned that Plaintiff never intended to pursue a discrimination claim and so Plaintiff voluntarily dismissed it with prejudice (Doc. 107).

Most of Attorney Hunt's hours were incurred after the pretrial conference, and all of Attorney Johnson's hours were incurred after the pretrial conference. Very little evidence was presented at trial regarding retaliation (which is why it was not surprising that Plaintiff did not prevail on those claims), and therefore the Court finds that it is unnecessary to make further reductions to Attorney Johnson's hours and Attorney Hunt's hours.

**FINAL CALCULATIONS FOR PLAINTIFF'S ATTORNEYS' FEES**

| Attorney | Reasonable Hourly rate | Hours | Total |
|---|---|---|---|
| Veronica Johnson | $400 | 36.9 | $14,760 |
| Sarah Hunt | $350 | 151 | $52,850 |
| Mary Anne Quill | $225 | 137 | $30,825 |
| Amber Kempf | $250 | 54.4 | $13,600 |
|  |  |  | **$112,035** |

**Costs**

Under the FLSA, Plaintiff is also entitled to her attorney's "reasonable out-of-pocket expenses" related to this litigation, including those costs above and beyond what is listed under Federal Rule of Civil Procedure 54(d) and 28 U.S.C. §1920 (e.g., filing fees, transcript fees). *Smith v. Diffee Ford-Lincoln-Mercury, Inc*., 298 F.3d 955, 968-69 (10th Cir. 2002); *see also Walters v. Mayo Clinic Health Sys*., 91 F. Supp.3d 1071, 1081 (W.D. Wis. 2015).   Plaintiff submitted an invoice for $10, 732.59 for costs consisting of: 1) the initial filing fee; 2) medical records collection fees; 3) deposition fees; 4) subpoena service fees; 5) hotel rooms for Plaintiff's attorneys during trial; 6) restaurant charges for Plaintiff's attorneys during trial; 7) Attorney Johnson's SDIL pro hac vice fee; 8) and Attorney Johnson's "meals and snacks re Cain trial."

Defendants claim that because Plaintiff did not provide receipts and invoices for her costs,

neither the Court nor Defendants can determine whether the costs are reasonable.   The Court disagrees (with the exception of the fees incurred by Plaintiff's process server, discussed below). Plaintiff provided descriptions of each cost that allows the Court to determine whether the claimed amount is reasonable.   For example, after the first day of trial, Attorney Hunt and Attorney Quill ate at Agave Restaurant in Mt. Vernon, Illinois.   The cost of their bill ($57.14) seems high for two people, but the Court notes that Attorneys Hunt and Quill only asked to be reimbursed for three meals over the course of a three-day trial and therefore the total cost for meals during trial is reasonable, without the Court opining on what they should have ordered.

Defendants further object that Plaintiff should have used a less-expensive process server; Plaintiff incurred approximately $2300 in fees for serving Defendant Patel with the summons, and four witnesses for depositions, and then four witnesses again for trial.   The Court will not engage in a discussion as to which process servers litigants should use, and how much they should charge, and can certainly foresee instances where service of process may cost approximately $250/person. However, the undersigned would only be speculating as to the circumstances that gave rise to the process servers' fees in this case.   At this time, the Court will not order Defendants to pay Plaintiff's service of process fees; however, on or before May 17, 2022, Plaintiff may submit an affidavit(s) and/or invoice(s) from the process server explaining the charges incurred.   Defendants may file an objection on or before May 31, 2022.

As for the rest of Plaintiff's costs, most seem reasonable.   The Court will not charge Defendants for the $47.47 fee Plaintiff incurred to obtain her medical records, because Plaintiff's medical condition was not an issue in Counts 1, 2, 4, or 5.   The Court will also not order Defendants to pay for Attorney Johnson's SDIL pro hac vice fee, or her $160.85 spent on "meals and snacks" at trial.   As previously explained, the appearance of a second senior attorney at trial

was not necessary or reasonable in this relatively straight-forward case.[7]   Plaintiff asks to be reimbursed for $2,030.28 spent on hotel rooms for her attorneys at the Doubletree in Mt. Vernon, Illinois during trial, but that amount includes a room for Attorney Johnson as well as Attorneys Hunt and Quill.   The hotel fee is therefore reduced by 33% to $1,339.99.   Plaintiff's total reasonable costs (minus any service of process fees) are therefore $7,259.48.

## CONCLUSION

For the reasons previously stated, Plaintiff's Motion for Attorney Fees and Expenses (Doc.128) is GRANTED IN PART and DENIED IN PART.   Pursuant to §216(b) of the Fair Labor Standards Act and §105/12(a) of the Illinois Minimum Wage Law, Defendants shall pay to Plaintiff  $112, 035 in attorneys' fees and $7,259.48 in costs.   Plaintiff is granted leave to re-submit any invoice(s) or affidavits that establish the reasonableness of her process service fees on or before May 17, 2022.   Defendants may file an objection on or before May 31, 2022.

Finally, Defendants filed a Motion to Strike Plaintiff's Reply to their Response to the Motion for Fees and Costs (Doc. 135).   Defendants argue that Plaintiff failed to establish "exceptional circumstances" that justified filing a Reply pursuant to Local Rule 7.1.   The Court agrees that most of Plaintiff's Reply (Doc. 133) simply repeated the arguments in her Motion and therefore did not appear to contain any "exceptional circumstances."   However,  in the Reply, Plaintiff references an "Exhibit A" that she apparently intended to file as an exhibit to the Reply; instead, she filed "Exhibit A" as a stand-alone pleading (Doc. 134).   Plaintiff explains that "Exhibit A" filed at Doc. 134 consists of her "updated" billing entries that were distorted when

---

[7] Most of the work Attorney Johnson performed from July 5-7, 2021 (the dates of trial) duplicated Attorney Hunt's work and, as previously explained, was cut.   For the few non-duplicative tasks performed during that time period, it was not necessary for Attorney Johnson to be present in Benton to perform them (e.g., "research case law in 7th Circuit accepting 8th Circuit pattern instructions") (Doc. 128-5, p. 67-68).

she originally filed them as an Exhibit (Doc. 128-5) to her Motion for Fees (Doc. 128).   In any event, the Court reviewed both the "distorted" entries (Doc. 128-5) and Exhibit A (Doc. 134) in calculating Plaintiff's attorneys' time.   Plaintiff did not explain what she means by "distorted" and for this reason (among others), the Court did its own calculations when totaling Plaintiff's fees.   In any event, because Plaintiff's Reply (Doc. 133) attempts to explain why she filed "Exhibit A", and because the Court reviewed "Exhibit A" (Doc. 134), the Court will not strike the Reply. Defendants' Motion to Strike (Doc. 134) is DENIED.

**IT IS SO ORDERED.**

**DATED:   May 2, 2022**

s/ *Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**